IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| SHAUN L. CHRISTENSEN,<br><br>   Plaintiff,<br><br>vs.<br><br>PARK CITY MUNICIPAL CORP., a governmental entity; SHAUNA STOKE, Park City Code Enforcement Officer; RON KING, Park City Police Officer; an WAYNE YOUNG, Park City Police Officer,<br><br>   Defendants. | MEMORANDUM DECISION AND ORDER DENYING PLAINTIFF'S MOTION TO STRIKE ERRATA & PORTION OF REPLY MEMO AND GRANTING DEFENDANTS' MOTION TO DISMISS<br><br><br><br>Case No. 2:06-CV-202 TS |

   Qualified immunity shields government officials from civil damages suits for violations of civil rights if their conduct does not violate clearly established constitutional rights of which a reasonable official would have known. Defendants assert qualified immunity against Plaintiff's claims that their enforcement of city ordinances prohibiting selling their artwork outdoors on city property without a license violated his constitutional

1

rights. Because the rights that Plaintiff relies upon were not clearly established at the time of Plaintiff's arrest, Defendants are entitled to qualified immunity.

Plaintiff alleges as follows: He is a visual artist. On January 17, 2005, he was displaying and selling his art work in a city park located in Park City, Utah. He was arrested by Defendants King and Young for conducting business without a business license and conducting business not in an enclosed building in violation of Park City Ordinances § 4-2-1 and § 4-3-2 (the Ordinances). He was incarcerated and charged, but the charges were later dropped. The Ordinances contain an exception for civic groups such as the Girl Scouts.[1] He claims that the Defendants' conduct violated his rights under the Utah and United States constitutions by interfering with his First Amendment right to Freedom of Expression, his rights under the Equal Protection Clause, and right to be free of unreasonable seizure. Pursuant to 42 U.S.C. § 1983, he seeks monetary and declaratory relief under the United States Constitution and seeks declaratory relief under the Utah Constitution.

Defendants contend that the Ordinances are content neutral restrictions on the time and manner of street vending. Defendants move to dismiss for the failure to state a claim on the following grounds: One, that qualified immunity applies because Plaintiff does not allege a violation of a clearly established constitutional right. Two, that Plaintiff cannot sue the individual defendants in their official capacities. Three, that he fails to state a claim against the individual Defendants because he fails to allege facts sufficient to show a

---

[1] Former Park City Ord. § 4-3-16. This ordinance was not specifically cited in the Complaint.

violation of his constitutional rights of freedom of expression, equal protection, and unreasonable seizure. Four, that he fails to state a claim against defendant Stokes because he does not allege Stokes' personal participation in the events. Five, that he fails to state a claim for municipal liability because he does not allege a municipal policy or custom.

Plaintiff contends that his Complaint states a claim for constitutional violations because he claims that the Ordinances as applied denied a street artist access to public sidewalk and park while allowing others access to the same locations to sell their wares. He contends that qualified immunity does not apply because a First Amendment right of street artists has been clearly established for some time. He contends that his claims are properly brought against the individual Defendants in their official as well as personal capacities, that Defendant Stokes personally initiated the action and that the individual Defendants acted under a municipal policy.

Defendants raise their qualified immunity challenge under Rule 12(b)(6).[2]

Asserting a qualified immunity defense via a Rule 12(b)(6) motion, . . ., subjects the defendant to a more challenging standard of review than would apply on summary judgment. We accept all well-pleaded allegations of the complaint as true and consider them in the light most favorable to the nonmoving party. Further, we will not dismiss a complaint unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.

"Our threshold inquiry in the qualified immunity analysis is whether, taking plaintiff's allegations as true, [defendants] violated [his constitutional right.] If we conclude that [plaintiff has] alleged constitutionally impermissible conduct, [the officers] may nevertheless be shielded from liability for civil

---

[2]Fed R.Civ P.

damages if [their] actions did not violate clearly established . . . constitutional rights of which a reasonable person would have known.'[3]

As a preliminary matter, this case involves an ordinance that was applicable in January 2004. Since then the Ordinances have been repealed and replaced. Defendants filed an Errata which attached the current Ordinance. Plaintiff moves to strike the Errata and the portions of Defendants' Reply brief that refer to the current Ordinances because he seeks no relief regarding the current Ordinances.

As the parties' arguments regarding the Errata have now been made clear, this present action involves only the Ordinances in place in January 2004. The record clearly reflecting the applicable Ordinances are those former Ordinances in effect in 2004, the Court will deny the Motion to Strike Errata & Portions of the Reply Brief.

Turning to the threshold question, the Court finds that viewing all of the allegations in the Complaint as true for the purposes of this motion, that the Plaintiff has not made an initial showing of a violation of his First Amendment rights by alleging that he was arrested for engaging in expressive activity protected by the First Amendment and the free expression provision of the Utah Constitution because his allegations do not identify the material at issue. The Second Circuit has held that some types of visual art – paintings, photographs, prints, and sculptures – are presumptively expressive and therefore are

---

[3] *Walker v. City of Orem*, 451 F.3d 1139, 1145 (10th Cir. 2006) (quoting *Jones v. Hunt*, 410 F.3d 1221, 125 (10th Cir. 2005) (quoting *Hope v. Pelzer,* 536 U.S. 730, 739 (2002)).

protected under the First Amendment.[4]  However, since *Bery*, the application of its holding has been dependent upon the specific nature of the material.

In considering whether Plaintiff has alleged facts showing a violation of a constitutional right, this Court agrees with those courts holding that specific goods described as art work are entitled to First Amendment protection if they are protected expression under the First Amendment.[5]  For example in *Mastrovincenzo*,[6] the Second Circuit construed its earlier *Bery* case as holding that some visual arts–paintings, photographs, prints and sculptures-automatically trigger First Amendment review.  But it adopted a dominant purpose test for determining whether other forms of goods designated as art are entitled to First Amendment protection.[7]

In *Celli v. City of St. Augustine*,[8] the trial court expressly declined to reach as far as the *Bery* case's broad holding regarding visual arts as protected under the First Amendment.[9]  Instead, the *Celli* court found that the specific visual art at issue in that case was protected under the First Amendment because it clearly incorporated written

---

[4]*Bery v. City of New York*, 97 F.3d 689, 696 (2nd Cir. 1996).

[5]*Mastrovincenzo v. City of New York*, 435 F.3d 78, 94-96 (2nd Cir. 2006).

[6]435 F.3d at 94-96

[7]*Id.*

[8]214 F.Supp.2d 1255 (M.D. Fla. 2000).

[9]*Id.* at 1258.

expression such as phrases and poems that were political parody or statement protected under the First Amendment.[10]

In *White v. City of Spark,*[11] like *Celli*, a trial court declined to adopt the broad *Bery* holding that certain forms of visual art were inherently expressive and entitled to First Amendment protection without individualized inquiry into expressiveness.[12]

> While plaintiff would have this court adopt the *Bery* holding and find that all paintings, photographs, prints and sculptures are inherently expressive, thereby eliminating the need for any individualized inquiry into the expressiveness of a particular piece of art or a particular type of artwork, the court declines this invitation. Applying such a blanket presumption of protected status would not only be unnecessary to resolve the motion before the court, but would also be out of step with Ninth Circuit precedent and the First Amendment's fundamental purpose-to protect *expression.*[13]

Upon such individualized inquiry, the *White* court found that the specific artwork at issue therein was a political, religious, philosophical, or ideological message that merited First Amendment protection.[14]

This Court need not determine the exact parameters of the First Amendment protection for sale of expressive art work because of the vagueness of Plaintiff's allegations. Under those allegations, the Court could only find a constitutional violation if it determined that the sale of any good designated by the seller as art work is entitled to

---

[10]*Id*. at 1258-59.

[11]341 F.Supp.2d 1129 (D. Nev. 2004).

[12]*Id.* at 1139.

[13]*Id.* at 1138 -39.

[14]*Id*.

First Amendment protection. Such an interpretation would exceed that adopted by any other court because *Bary* limited the presumptively expressive status of artwork to four specific categories of art, and Plaintiff's allegations are too vague to even place his artwork within one of those four categories. In considering this Motion to Dismiss, the Court considers only the allegations of the Complaint, which merely allege that the goods he was selling are "art" and "art work." By itself, this is insufficient to show that their sale is protected activity under the First Amendment. Accordingly, the Court need not address Defendants' argument that the former Ordinances are valid time, place, and manner restrictions on protected speech.

Taking all of Plaintiff's allegations as true, the Complaint must be dismissed if Plaintiff does not allege a constitutional violation.[15] Where the Court finds that Plaintiff has not met the first part of the qualified immunity analysis, "there is no necessity for further inquiries concerning qualified immunity."[16]

Plaintiff seeks leave to amend the Complaint if the Court finds merit in the Motion to Dismiss. He does not specify the proposed amendments. Defendants oppose granting leave to amend on the grounds that it would be futile.

Leave to amend a party's complaint "shall be freely given when justice so requires."[17] Tenth Circuit case law "establishes a limitation to this principle: the district

---

[15]*Lawrence v. Reed*, 406 F.3d 1224, 1230 (10th Cir. 2005).

[16]*Saucier v. Katz*, 533 U.S. 194, 201 (2001).

[17]Fed.R.Civ.P. 15(a).

court may dismiss without granting leave to amend when it would be futile to allow the plaintiff an opportunity to amend his complaint."[18]

The Court finds that leave to amend would be futile for the Defendants sued in their individual capacities because the Court finds that the case law relied upon by Plaintiff was not "clearly established" in January 2004.  As noted above, the Court ordinarily need not address the second part of qualified immunity analysis where it has not found the Complaint alleges a constitutional violation.  But in this case it is necessary in order to address the issue of futility of the proposed amendment.

> Whether a legal rule was clearly established at the time official action was taken depends substantially upon the level of generality at which the relevant legal rule is to be defined." . . . [The Supreme Court] has adopted a more particularized approach to whether a right has been "clearly established," requiring that the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected . . . unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent.  Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains.[19]

Plaintiff does not argue that there is Supreme Court case law on point and concedes, as he must, that there is no Tenth Circuit law directly on point.[20]  Instead,

---

[18]*Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006).

[19]*Walker*, 451 F.3d at 1151 (quoting *Medina v. City & County of Denver,* 960 F.2d 1493, 1498 (10th Cir. 1992)).

[20]Pl.'s Opp. at 6.

Plaintiff relies upon four cases[21] from other jurisdictions to show the law was clearly established.  In *Bery*, the Second Circuit held that visual artists selling four types of presumptively expressive types of art work had "full First Amendment protection" for sale of their work in public places.[22]

In *Perry v. Los Angeles Police Dept.*,[23] the Ninth Circuit held that sales of music, buttons and bumper stickers bearing political, religious, and ideological messages were fully protected speech under the First Amendment.  *Perry* also involved a musician and performance artist whose music the Ninth Circuit held implied religious content.[24]  The Ninth Circuit held that because these activities were protected speech, the local ordinance banning them but allowing an exception for similar sales by nonprofit organizations implicated the Equal Protection Clause.[25]  The difference in the type of activities at issue in *Perry* renders it of scant precedential value for the proposition Plaintiff advances as clearly established in the present case, namely that visual artists selling their visual art are protected by the First Amendment.  No doubt it for this reason that the Ninth Circuit did not cite or rely on *Bery* in its *Perry* case, although it was decided nearly one year after *Bery*.

---

[21]*Bery, supra*; *Perry v. Los Angeles Police Dept.*, 121 F.3d 1365 (9th Cir. 1997); *White, supra*; *Celli, supra*.

[22]*Bery*, 97 F.3d at 698.

[23]121 F.3d at 1366-67.

[24]*Id.*

[25]*Id.* at 1368.

As noted above, in *Celli*, the trial court expressly declined to reach as far as the *Bery* case's holding that the four categories of visual art are protected under the First Amendment.[26] Instead, the *Celli* court examined the specific visual art at issue and afforded it First Amendment protection because it clearly incorporated written expression such as phrases and poems that were political parody or statements protected under the First Amendment.[27]

The Court's clearly established analysis need not address the *White* case because it was issued on August 5, 2004,[28] after the alleged events in this case. Therefore it could not have formed part of the clearly established law in January 2004. Similarly, *Mastrovincenzo v. City of New York*[29] in which the Second Circuit applied and clarified its holding in *Bery* was decided after January 2004.

In *Walker*, the Tenth Circuit made it clear that the clearly established law analysis is to be determined by reference to case law "prior to the events in question."[30] In January 2004, this then was the state of case law: There were no Tenth Circuit or Supreme Court cases on point. There was one Second Circuit case holding that visual art consisting of "paintings, photographs, prints and sculptures . . . always communicate some idea or

---

[26] 214 F.Supp.2d at 1258.

[27] *Id*. at 1258-59.

[28] 341 F.Supp.2d 1129.

[29] 435 F.3d 78, 94-96 (2nd Cir. 2006). The district court opinion in *Mastrovincenzo* was also issued after January 2004. *See Mastrovincenzo v. City of New York*, 313 F.Supp.2d 280 (S.D. N.Y. April 7, 2004).

[30] 451 F.3d at 1151.

concept to those who view it, and as such are entitled to full First Amendment protection."[31] There was one district court case that *declined* to adopt the Second Circuit's broad holding but did afford First Amendment protection to particular artwork because it incorporated written expressions that were themselves entitled to First Amendment protection.[32] Reliance on those two cases does not meet Plaintiff's burden of showing that there was a clearly established *weight* of authority from other courts regarding First Amendment protection for visual artists to sell art work in public places. This is true whether the type of art work is unspecified as under the present Complaint or if the art work was one of the types of art work held to be presumptively expressive under the *Bery* analysis. For even those presumptively expressive types of art work, two relevant cases, *Bery* and *Celli*, do not meet the Plaintiff's burden of showing clearly established law by the weight of authority from other cases.

Plaintiff's claims under the Equal Protection Clause and his claim under the Fourth Amendment right to be free of unreasonable seizures are premised on an allegation that Plaintiff was engaged in protected speech. For example, Plaintiff relies upon *Perry* for the proposition that treating street artists differently under the Ordinances than civic groups allowed to sell goods violates his rights under the Equal Protection Clause.[33] But *Perry's*

---

[31] *Bery*, 97 F.3d at 696.

[32] *Celli, supra.*

[33] Pl.'s Opp. at 9, citing *Perry, supra.*

holding was premised on its finding that the prohibited activity was protected under the First Amendment[34]–law that was not clearly established regarding Plaintiff's activities.

Similarly, although Plaintiff claims that his seizure by arrest resulted from his expressive conduct, he failed to show clearly established law from which a reasonable official would have understood that Plaintiff was engaged in protected expressive conduct or that the ordinance that the official was enforcing was constitutionally infirm.

Having failed to show that there was clearly established law that selling art work was protected speech, the contours of the rights asserted by Plaintiff were not "sufficiently clear that a reasonable official would understand that what he was doing violated that right."[35] Plaintiff "had the burden, in response to defendants' motion to dismiss, of articulating such clearly-established law."[36] Having failed to articulate clearly established law, it would be futile to allow Plaintiff to amend his claim as to any of the individual defendants.

"A dismissal with prejudice is appropriate where a complaint fails to state a claim under Rule 12(b)(6) and granting leave to amend would be futile."[37] Accordingly, the Court will grant the Motion to Dismiss against the individual defendants in their individual capacities with prejudice.

---

[34]*Perry*, 121 F.3d at 1368 ("When a government allows some forms of *protected* speech but prohibits other forms of *protected* speech, the Equal Protection Clause is implicated . . . ") (emphasis added).

[35]*Walker,* 451 F.3d at 1151 (quoting *Brosseau v. Haugen*, 543 U.S. 194, 199 (2004)).

[36]*Id.*

[37]*Brereton v. Bountiful City Corp*., 434 F.3d 1213, 1219 (10th Cir. 2006) (citing *Grossman v. Novell, Inc.,* 120 F.3d 1112, 1126 (10th Cir. 1997)).

Plaintiff contends that even if the individual Defendants are entitled to qualified immunity, municipalities and individuals sued in their official capacities cannot avail themselves of the qualified immunity defense. As to the individual defendants in their official capacity, such claims of constitutional violations against the individuals in their official capacity is equivalent to a suit against Park City (the City) itself and is to be treated as a suit against the City.[38]

The Court agrees with Plaintiff that a municipal defendant is not entitled to qualified immunity.[39] "A plaintiff suing a [city] under section 1983 for the actions of one of its officers must demonstrate two elements: (1) a municipal employee committed a constitutional violation, and (2) a municipal policy or custom was the moving force behind the constitutional deprivation."[40] A "municipality may not be held liable where there was no underlying constitutional violation by any of its officers."[41] A government policy may be manifested by the acts of its lawmakers.[42]

In the present case the Ordinances are the acts of the City's lawmakers and the Court cannot say on the present record that it would be futile to grant Plaintiff leave to

---

[38] *Kentucky v. Graham*, 473 U.S. 159, 166 (1985).

[39] *Walker*, 451 F.3d at 1152.

[40] *Id.* (quoting *Myers v. Okla. County Bd. of County Com'rs,* 151 F.3d 1313, 1318 (10th Cir. 1998)).

[41] *Id.* (quoting *City of Los Angeles v. Heller,* 475 U.S. 796, 799 (1986)).

[42] *Monell v. Dept. of Soc. Services.*, 436 U.S. 658, 964 (1978).

amend his Complaint against the City.  Any claims against the individuals in their official capacities will be considered as part of the claim against the City.

As to Plaintiff's claims under the Utah Constitution, Plaintiff has clarified that he seeks only unspecified "equitable relief" on those claims.[43]  Commonly, equitable relief in the form of an injunction is sought where there is a claim of a constitutional violation.  It is not clear if such prospective injunctive relief is the "equitable relief" Plaintiff seeks under the Utah Constitution.

Plaintiff cites no law and makes no argument regarding his claims for violations of his rights to expression, equal protection, and freedom from unreasonable seizures under the Utah Constitution.  The Court finds that his Complaint fails to state a basis for these claims under the Utah Constitution.  But on the record at this early stage of the action, the Court cannot find that it would be futile to grant him leave to amend his Complaint regarding claims under the Utah Constitution.

Based upon the foregoing, it is therefore

ORDERED that Plaintiff's Motion for Strike Errata and Portions of Reply Memo (Docket No. 22) is DENIED.   It is further

ORDERED that Defendants' Motion to Dismiss (Docket No. 11) is GRANTED with prejudice as to Defendants Shauna Stoke, in her individual capacity, Ron King, in his individual capacity, and Wayne Young in his individual capacity.  It is further

---

[43]Pl.'s Opp. at 7 and n.8.

ORDERED that Defendants' Motion to Dismiss (Docket No. 11) is GRANTED without prejudice as to Defendant Park City Municipal Corporation and Defendants Stoke, in her official capacity as Park City Code Enforcement Officer, King, in his official capacity as a Park City Police Officer, and Young, in his official capacity as a Park City Police Officer.  It is further

ORDERED that Plaintiff's request for leave to amend his Complaint is DENIED as to the individual Defendants in their individual capacities but is OTHERWISE GRANTED. It is further

ORDERED that Plaintiff has twenty days from the entry of the Order to file such any such amended complaint.

DATED  September 15, 2006.

BY THE COURT:

_____
TED STEWART
United States District Judge